IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | | |
|---|---|---|
| TIM DEWBRE, On Behalf of Himself and All Others Similarly Situated, | § § § § § § § § § § § | |
| Plaintiff, | | |
| V. | | CIVIL ACTION NO. 7:15-cv-00058 |
| HORIZON MUD COMPANY, INC. | | JURY TRIAL DEMANDED |
| Defendant. | | CLASS ACTION |

**PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff, TIM DEWBRE ("Dewbre" or "Plaintiff"), on behalf of himself and all other similarly situated affected employees, files this First Amended Complaint against Horizon Mud Company, Inc. ("Horizon" or "Defendant"). Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), this First Amended Complaint is filed as a "matter of course" within 21 days of the filing of Defendant's Motion to Dismiss Plaintiff's Complaint and Brief in Support on June 26, 2015, which is the only responsive pleading/motion filed by Defendant herein after being served with Summons. (See ECF No. 8). Plaintiff would respectfully show the Court as follows:

I.  **NATURE OF THE CASE**

1.  This is a civil action brought by Plaintiff pursuant to the Worker Adjustment and Retraining Notification Act of 1988, 29 U.S.C. §§2101-2109 *et seq.*, (the "WARN Act") for Defendant's failure to give the required WARN Act written notice to Plaintiff and similarly situated individuals (the "Class Members") in connection with recent a Mass Layoff and/or Plant Closing at Defendant's Midland, Texas site of employment/operational units within that single

site of employment at/from/through which Plaintiff and the Class Members were employed during the relevant time period.

2.      Accordingly, Defendant is liable under the WARN Act for failing to provide Plaintiff and the Class Members written notice, including 60 days' advance written notice, as required by the WARN Act.

## II.     THE PARTIES, JURISDICTION AND VENUE

### A.     Plaintiff Tim Dewbre

3.      Dewbre is a natural person who resides in Gray County, Texas. He has standing to file this lawsuit.

4.      Dewbre was employed by Defendant as a mud engineer[1]/field consultant. Pursuant to the Warn Act, he was outstationed and/or had primary duties involving work outside Defendant's regular employment sites. 20 C.F.R. §639.3(i)(6). At all times relevant, Defendant's headquarters were located in Midland, Texas at or near 500 West Wall Street, Midland, Texas 79701 (the "Midland Office" or "Defendant's Headquarters"). Dewbre was dispatched and assigned work from Defendant's headquarters, was required to report to Defendant's headquarters, and/or was assigned Defendant's headquarters as his home base. Dewbre was dispatched and/or assigned to various oil and/or natural gas drilling sites, including drilling sites in and around Midland, Texas, to provide work and services for customers of Defendant. At those drilling sites Dewbre serviced, supervised, and consulted regarding the use of drilling fluids/drilling fluid related services sold, offered, recommended, and/or provided by

---

[1] Although such personnel are referred to as "mud engineers," the title is somewhat misleading as they seldom, if ever, have an engineering degree, and an engineering degree is not required for the typical mud engineer job. Dewbre did not have an engineering degree. Instead, mud engineers are field representatives of a drilling fluid company who make sales and/or recommendations on a given oil and/or gas drilling site regarding the use of products, programs, and solutions offered/sold by drilling fluid companies, such as Defendant.

2

*Plaintiff's First Amended Complaint*

Defendant. Drilling fluids include a wide range of products used in connection with drilling operations in the oil and/or gas exploration drilling industry.

5. Dewbre's employment with Defendant was verbally terminated without any advance written warning on or about January 8, 2015 ("Dewbre's Employment Loss"). At all times relevant, Plaintiff was a full time employee of Defendant.

### B. Class Members

6. The scope of the class is presently limited to similarly situated affected employees who work/worked for Defendant in connection with Permian Basin oilfield operations in and around West Texas at/from through the Defendant's Midland Office, satellite offices, warehouses, plants and/or drilling sites of customers of Defendant.

7. The Class Members are affected employees of Defendant who were/are similarly situated to Dewbre, including their common employment at the relevant single site of employment pursuant to the WARN Act ("single Site of Employment") and/or and who were or may reasonably be expected to experience an employment loss pursuant to the WARN Act ("Employment Loss"), as a consequence of Defendant's Mass Layoff involving Defendant's single Site of Employment in the 30 day or 90 day period from Dewbre's Employment Loss.

8. Alternatively, the Class Members are affected employees who are similarly situated to Dewbre, including their employment at/from/through the relevant single Site of Employment/operational units at/within that single Site of Employment, and who were or may reasonably be expected to experience an Employment Loss as a consequence of Defendant's Plant Closing at Defendant's single Site of Employment/operational units at/within that single Site of Employment made the subject matter of this lawsuit in the 30 day or 90 day period from Dewbre's Employment Loss.

9. On information and belief, the single Site of Employment for purposes of the WARN Act is Defendant's Midland Office.

10. Alternatively, should discovery reveal that there is more than one single Site of Employment for Dewbre and the Class Members, or that sites[2] other than/in addition to the Midland Office collectively meet the single site of employment definition under the WARN Act (*e.g.* non-contiguous sites in the same geographical area which share staff, equipment or operational purposes), then Dewbre reserves the right to modify the class definition or establish sub-classes in connection with any amended pleading and/or motion for class certification.

C. **Defendant Horizon Mud Company, Inc.**

11. On information and belief, Defendant is a for-profit corporation organized under the laws of the State of Texas.

12. During all times relevant to this lawsuit, Defendant has done business in the State of Texas.

13. On information and belief, during the time period relevant to this lawsuit, Defendant's principal place of business is and has been at or near 500 W. Wall Street, Midland, Texas 79701. Defendant operates numerous self-described "satellite offices" and "warehouses and plants" in and around the Permian Basin area of oilfield operations in close proximity to the Midland Office. (See http://www.horizonmud.com/locations/ (Last accessed July 17, 2015)).

14. Defendant has been served with summons and has entered an appearance in this lawsuit.

D. **Jurisdiction and Venue**

---

[2] According to Defendant's website, it operates numerous "satellite offices" and warehouses and plants in and around the Permian Basin oilfield region. (See http://www.horizonmud.com/locations/ (Last Accessed July 17, 2015)).

*Plaintiff's First Amended Complaint*

15. The Court has personal jurisdiction over Defendant based on both general and specific jurisdiction.

16. During all times relevant to this lawsuit, Defendant has done business in the State of Texas and continues to do business in the State of Texas.

17. The Court has subject matter jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331, because Dewbre bases his claim, and the claims of the Class Members on federal law, namely 29 U.S.C. §§2101-2109.

18. Venue is proper in the United States District Court for the Western District of Texas because Defendant identifies that its main corporate office is located in this judicial district at 500 West Wall Street, Midland, Texas 79701. On information and belief, that location is Defendant's principal place of business. Furthermore, a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district. Finally, at all relevant times, Defendant transacted business in this District and continues to transact business in this District. 29 U.S.C. §2104(a)(5).

19. Venue is proper in the Midland Division of the United States District Court for the Western District of Texas because Defendant maintains business operations, including its main corporate office, in the Midland Division; a substantial part of the events giving rise to Plaintiff's claims occurred in the Midland Division; and, on information and belief, Defendant's principal place of business is located within the Midland Division as identified above.

### III.    FACTUAL BACKGROUND

20. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

21. On information and belief, and at all material times, Defendant is and has been a business enterprise that employs 100 or more employees, excluding part-time employees and employees who have worked less than 6 months in the 12-month period preceding the first date that WARN Act notice was required to be given.

22. On information and belief, Defendant's Midland Office is/was the single Site of Employment, as defined by the WARN Act, for employees of Defendant, such as Dewbre and the Class Members working in and around the Permian Basin region. On information and belief, management of Defendant's operations, including the management and administrative support of Dewbre and the Class members, is/was conducted at/from/through the Midland Office single Site of Employment. Furthermore, Defendant maintains/maintained numerous satellite offices, warehouses and plants in and around the Midland office which, on information and belief, supported operations in Defendant's Permian Basin Operations. (See http://www.horizonmud.com/locations/ (Last accessed July 17, 2015)).

23. Defendant's business operations include the sale of products and services used in connection with oil and/or natural gas drilling operations by third parties, such as drilling contractors and/or oil and/or gas exploration companies. The primary products sold by Defendants are drilling fluids, which include a variety of minerals and chemicals used in connection with oil and/or natural gas drilling rig operations.

24. Defendant also provides personnel, sometimes referred to as mud engineers or field representatives which typically work at the drilling rig site in connection with providing Defendant's products and services to customers of Defendant. As oil and/or gas drilling operations almost always operate 24 hours per day, seven days per week, it is common for more than one mud engineer to be assigned to a given oil and/or natural gas drilling location until that

drilling project is completed. According to Defendant, unlike other drilling fluid companies that may have a mud engineer covering more than one drilling rig operation, Defendant distinguishes itself from the competition as follows:

> The only way a mud engineer can be an asset to you is to be able to spend time on your well. There are many great mud engineers that can't spend time on your well because they are simply working too many locations. The backbone of our commitment to you is to provide a service team that is not overloaded. Even on 24-hour sit jobs, it's a 24-hour focus.

(See http://www.horizonmud.com/horizon-difference/ (Last accessed July 17, 2015)). Once operations are complete at a given drilling operation, mud engineers/field representatives are then are assigned to the next drilling or other project/work location as determined by Defendant.

25. Additionally, there are numerous other employees of Defendant involved in connection with Defendant's business operations other than mud engineers/field representatives. Work performed by those other employees includes sales, administrative support, human resources, safety, warehouse work, pant work, drilling fluid/product maintenance, and drilling fluid product delivery and recovery relative to specific drilling locations. As Defendant admits on its website regarding its products and services, "[e]very sack [of drilling fluid product] we sell includes a team of engineers, technicians and field analysts equipped to deliver unlimited high-quality service and value on every well."  (See http://www.horizonmud.com/products-service/ (Last Accessed July 17, 2015)).  This work is performed at and around Defendant's Midland Office, satellite offices, warehouses and plants in addition to the drilling locations of customers of Defendant.  Similarly, Defendant admits:

> We are an extension of your team. Our organization is structured to put our entire team to work on your project. Your experience with Horizon Mud is consistent no matter where your well is located. Whatever it takes to achieve your goal, we do it.

(See http://www.horizonmud.com/horizon-difference/ (Last accessed July 17, 2015)). This admission exemplifies that various employees of Defendant with different job titles and duties performed different tasks to support the Defendant's customer, which was typically a drilling contractor and/or oil and/or natural gas exploration companies.

26.     Dewbre was employed by Defendant as a field consultant or mud engineer. Pursuant to the WARN Act, he was outstationed and/or had primary duties involving work outside Defendant's Midland Office, satellite offices, warehouses and/or plants in connection with the products and services sold/provided to oilfield customers of Defendant as described *supra* in and around the Permian Basin oilfield operations.  20 C.F.R. §639.3(i)(6).  Dewbre was dispatched and assigned work from Defendant's Midland Office; was required to report to Defendant's headquarters; and/or was assigned Defendant's headquarters as his home base. Dewbre was dispatched and/or assigned to various oil and/or natural gas drilling sites, including sites in and around Midland, Texas, where he serviced, supervised, and consulted regarding the use of products and services offered/sold by Defendant in the drilling operations at each site.

27.     The operational duration of typical oil and/or gas drilling site where mud engineers/field representatives like Dewbre worked varied depending on a variety of factors at the particular site, but typical operations at a drilling site might last anywhere from a few weeks to a few months.  Upon completion of the drilling operations at such a site, field representatives/mud engineers such as Dewbre were typically assigned to another oil and/or gas drilling location of a customer of Defendant to provide their field consultant/mud engineer job duties for customers of Defendant.

28.     Dewbre worked with numerous other employees of Defendant including mud engineers/field representatives, managers, administrative support, warehouse workers, plant

workers, drivers, etc. in and around Defendant's Permian Basin operations in and around West Texas. Defendant's employees, like Dewbre, performed work in connection with providing Defendant's wide range of products and services sold/provided to oilfield customers of Defendants. Employees and equipment of Defendant were shared amongst Defendant's Midland Office, satellite offices, warehouses and plants and/or drilling locations of customers of Defendant in connection with Defendant's business operations in and around the Permian Basin oilfield operations. Like Dewbre, those workers are/were subject to Defendant's Mass Layoff and/or Plant Closing made the subject matter of this lawsuit.

29. Dewbre was verbally notified by Defendant on or about January 8, 2015 that his employment with Defendant was terminated or that he otherwise was subject to an Employment Loss. Dewbre was not discharged for cause, did not voluntarily resign, and did not retire.

30. On and around the time he was verbally notified of his Employment Loss, Dewbre learned that numerous other similarly situated employees of Defendant also suffered an Employment Loss.

31. On information and belief, the Employment Losses arising at/from/through Midland Office single Site of Employment made the subject matter of this lawsuit occurred within a 30-day period of Dewbre's Employment Loss. Alternatively, and on information and belief, those Employment Losses occurred within a 90-day period of Dewbre's Employment Loss, such employment losses not being the result of separate and distinct actions and causes.

32. On information and belief, 50 or more employees totaling 1/3 or more of the workforce assigned to/working at/from/through Midland Office single Site of Employment made the subject matter of this lawsuit experienced Employment Losses during the relevant time period. On information and belief, said Employment Losses were not bona fide discharges for

cause, voluntary departures, or retirements. On information and belief, 50 or more of those affected employees totaling 1/3 or more of the workforce assigned to/working at/from/through the Midland Office single Site of Employment made the subject matter of this lawsuit had been full-time employees of Defendant for six or more months in the 12-month period preceding the date WARN Act notice was due.

33. The exact number of employees who experienced Employment Losses arising at/from/through the Midland Office Site of Employment made the basis of this lawsuit within a 30-day and/or 90-day period of Dewbre's Employment Loss is information that is only known to Defendant. Similarly, the exact number of employees employed at/from/through that single Site of Employment is information that is currently known only to Defendant.

34. Dewbre and the Class Members were not provided with 60 days' advance written notice by Defendant of their Employment Losses, and the Mass Layoff and/or Plant Closing made the subject matter of this lawsuit.

35. Dewbre and the Class Members were not provided with any written notice by Defendant prior to their Employment Losses, and the Mass Layoff and/or Plant Closing made the subject matter of this lawsuit.

36. Dewbre and the Class Members were not provided with written notice, at any time prior to their Employment Losses, of each and every of the following items in connection with their Employment Losses: (a) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect; (b) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated; (c) An indication whether or not bumping rights

exist; (d) The name and telephone number of a company official to contact for further information.

### IV. WARN ACT CLAIMS

37. Dewbre incorporates the preceding paragraphs by reference as if set forth fully in this section.

38. At all material times, Dewbre and the Class Members were "full-time employees" of Defendant as that term is used in the WARN Act.

39. At all material times, Defendant was and is an employer under the WARN Act. 20 C.F.R. §639.3(a).

40. At material times, Defendant employed, and continues to employ, 100 or more employees, excluding part-time employees.

41. On information and belief, Defendant's Midland Office constitutes/constituted a single Site of Employment for Dewbre and the Class Members. 20 C.F.R. §639.3(i).

42. Dewbre maintains this action on behalf of himself and on behalf of each other similarly situated affected employee.

43. Each Class Member is similarly situated to Dewbre with respect to his or her rights under the WARN Act. 29 U.S.C. §2104(a)(5).

#### A. Mass Layoff

44. During a 30-day or 90-day period from Dewbre's Employment Loss, Defendant ordered/executed a "Mass Layoff" arising at/from/through the Midland Office single Site of Employment made the subject matter of this lawsuit. 20 C.F.R. §§639.3(c) & 639.5(a)(1).

45. Dewbre and the Class Members suffered Employment Losses in connection with Defendant's "Mass Layoff" made the subject matter of this lawsuit. 20 C.F.R. §639.3(f).

46. On information and belief, 1/3 of the employees at the Midland Office single Site of Employment made the subject matter of this lawsuit, totaling 50 or more employees, suffered Employment Losses as a result of that Mass Layoff.

47. Dewbre and the Class Members are aggrieved and affected employees under the WARN Act in connection with Defendant's Mass Layoff made the subject matter of this lawsuit. 29 U.S.C. §2101(5); 20 C.F.R. §639(e). Dewbre and the Class Members were employees of Defendant who did not receive the written notice required by 29 U.S.C. §2102 and were reasonably expected by Defendant and/or should have been reasonably expected by Defendant to experience an Employment Loss as a result of Defendant's Mass Layoff made the subject matter of this lawsuit.

    **B.**    **Plant Closing**

48. Pleading in the alternative, and on information and belief, with the number of Employment Losses at and/or arising at/from/through the Midland Office Single Site of Employment (*i.e.,* shutdown of the single Site of Employment and/or one or more facilities or operating units within the single Site of Employment) within 30 days or 90 days of Dewbre's Employment Loss, Dewbre and the Class Members experienced a "Plant Closing." 20 C.F.R. §§639.3(b) & 639.5(a). "Plant Closing" means the "permanent or temporary shutdown of a 'single site of employment', or one or more 'facilities or operating units' within a single site of employment, if the shutdown results in an 'employment loss' during any 30-day period at the single site of employment for 50 or more employees, excluding any part-time employees." 20 C.F.R. §639.3(b).

49. Dewbre and the Class Members are aggrieved and affected employees under the WARN Act in connection with Defendant's Plant Closing made the subject matter of this

lawsuit. 29 U.S.C. §2101(5); 20 C.F.R. §639(e). Dewbre and the Class Members were employees of Defendant who did not receive the written notice required by 29 U.S.C. §2102 and were reasonably expected by Defendant and/or should have been reasonably expected by Defendant to experience Employment Losses as a result of Defendant's Plant Closing made the subject matter of this lawsuit.

### C. No Written Notice of Mass Layoff and/or Plant Closing

50. Dewbre and the Class Members were not provided with 60 calendar days' advance written notice by Defendant of the planned/upcoming Employment Losses, Mass Layoff, and/or Plant Closing made the subject matter of this lawsuit.

51. Dewbre and the Class Members were not provided with any written notice by Defendant prior to their Employment Losses, Mass Layoff and/or Plant Closing made the subject matter of this lawsuit.

52. Dewbre and the Class Members were not provided with written notice, at any time prior to their Employment Losses, of each and every of the following items in connection with their Employment Losses, Mass Layoff, and/or Plant Closing: (a) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect; (b) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated; (c) An indication whether or not bumping rights exist; (d) The name and telephone number of a company official to contact for further information.

53. On information and belief, Defendant did not notify the Texas agency responsible for dislocated workers with the notice provisions required by 29 U.S.C. §2102(a) and 20 C.F.R.

§ 639.7(e) in connection with the Mass Layoff and/or Plant Closing made the subject matter of this lawsuit.

54. On information and belief, Defendant did not notify the Texas agency responsible for dislocated workers with the notice provisions required by 29 U.S.C. §2102(a) and 20 C.F.R. §639.7(e) in connection with the Employment Losses of Plaintiff and the Class Members.

### D. Damages

55. As a result of Defendant's violations of the WARN Act, Dewbre and the Class Members have suffered damages. Dewbre and the Class Members seek all damages available to them in connection with the claims set forth in this lawsuit, including 60 days' wages and benefits as provided by the WARN Act. 29 U.S.C. §2104.

### V. CLASS ACTION ALLEGATIONS

56. Dewbre incorporates the preceding paragraphs by reference as if set forth fully in this section.

57. Dewbre brings this action as a class action under Federal Rule of Civil Procedure 23(a), (b)(1) and (3) and the WARN Act 29 U.S.C. § 2104(a)(5).

58. Dewbre brings this action on behalf of himself and all other similarly situated employees. Dewbre seeks to represent a Class initially defined as: "All of Defendant's employees working at/from/through Defendant's Midland, Texas site of employment, including operational units thereof, in connection with business operations in the Permian Basin who experienced an employment loss during the 30 or 90-day period from January 8, 2015 without 60 days' advance written notice required by the WARN Act." Dewbre requests the opportunity to expand, narrow, or modify the class definition pursuant to a motion for class certification and/or amended pleading to the extent discovery reveals that there is more than one single Site of

Employment for Defendant's Permian Basin Operations, or if multiple sites should be collectively considered as one single site of employment in the Permian Basin Operations of Defendant. As discussed *supra* Defendant admits it has numerous satellite offices, warehouses and plants operating in the Permian Basin region in and around the Midland Office.

59. Dewbre and the Class Members are "affected employee(s)" subject to an "employment loss," as those terms are defined in the WARN Act at 29 U.S.C. §2101(a)(5) and (6).

60. Dewbre's claims satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action.

61. On information and belief, the Class Members are so numerous that joinder is therefore impracticable. The precise number of Class Members and their addresses are readily determinable from Defendant's records.

62. There are common questions of fact and law as to the class that predominate over any questions affecting only individual class members. The questions of law and fact common to the class arising from Defendant's conduct include, but are not limited to, the following:

> a. Whether the provisions of the WARN Act apply;
>
> b. Whether Defendant's employees working at/from/through the Midland Office Site of Employment for Defendant's oilfield operations in the Permian Basin experienced an Employment Loss in connection with a "Mass Layoff" and/or "Plant Closing" under the WARN Act;
>
> c. Whether Defendant failed to provide the notices required by the WARN Act;
>
> d. Whether Defendant can avail itself of any provisions of the WARN Act permitting lesser periods of written notice; and
>
> e. The appropriate method to calculate damages under the WARN Act.

63. The questions above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity, to other available methods for the fair and efficient adjudication of the WARN Act claims.

64. A class action is the superior method for the fair and efficient adjudication of this controversy. Defendant has acted or refused to act on grounds generally applicable to the class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of Class Members to protect their interests.

65. Dewbre is an affected former employee of Defendant who experienced an Employment Loss during the relevant 30-day and 90-day "look ahead" and "look behind" periods of the WARN Act, 20 C.F.R. §639.5, without the required written notice. Dewbre is, therefore, a member of the class. Dewbre is committed to pursuing this action and has retained counsel with extensive experience in prosecuting complex wage, employment, and class action litigation. Accordingly, Dewbre is an adequate representative of the class and has the same interests as all of its members. Further, Dewbre's claims are typical of the claims of all members of the Class, and Dewbre will fairly and adequately protect the interests of the absent members of the class. Dewbre and his counsel do not have claims or interests that are adverse to the Class Members.

66. Furthermore, class action treatment of this lawsuit is authorized and appropriate under the WARN Act, 29 U.S.C. §2104(a)(5), which provides that a plaintiff seeking to enforce

liabilities under the Act may sue either on his or her behalf, for other persons similarly situated, or both.

## VI. JURY DEMAND

67. Plaintiff demands a jury trial.

## VII. DAMAGES AND PRAYER

68. Plaintiff asks that he and the Class Members be awarded a judgment against Defendant or order(s) from the Court for the following:

    a. An order certifying that the action(s) may be maintained as a class action/class actions under Federal Rule of Civil Procedure 23;

    b. Designation of Allen R. Vaught, Baron & Budd, P.C., as Class Counsel;

    c. All damages allowed by the WARN Act, including back pay and benefits as provided by 29 U.S.C. §2104;

    d. Pre-judgment and post-judgment interest;

    e. Costs;

    f. Reasonable attorney's/attorneys' fees; and

    g. All other relief to which Dewbre and the Class Members are entitled.

Respectfully submitted,

By: s/ Allen R. Vaught
Allen R. Vaught
Attorney-In-Charge
TX Bar No. 24004966
MS Bar No. 101695
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219
(214) 521-3605 – Telephone
(214) 520-1181 – Facsimile
avaught@baronbudd.com

ATTORNEYS FOR PLAINTIFF

*Plaintiff's First Amended Complaint*

**CERTIFICATE OF SERVICE**

On July 17, 2015, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by the Federal Rules of Civil Procedure.

                                                s/   Allen R. Vaught
                                                   Allen R. Vaught